IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RETHINK35, et al., § | |
| § | |
| *Plaintiffs,* § | |
| § | |
| v. § | CIVIL ACTION NO. 1:24-CV-00092 |
| § | |
| TEXAS DEPARTMENT OF § | |
| TRANSPORTATION (TxDOT), et al. § | |
| § | |
| *Defendant.* § | |

**PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF NEW EVIDENCE AND
REQUEST FOR JUDICIAL NOTICE**

Robert J. Levinski (Texas Bar No. 24097993)
Victoria Rose (Texas Bar No. 24131088)
William G. Bunch (Texas Bar No. 0334520)
SAVE OUR SPRINGS ALLIANCE
4701 Westgate Boulevard, Suite D-401
Austin, Texas 78745
Telephone: (512) 477-2320
bobby@sosalliance.org
victoria@sosalliance.org
bill@sosalliance.org

*Attorneys for Plaintiffs*

Rachel S. Doughty (Cal. Bar No. 255904)
*Admitted Pro Hac Vice*
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, California 94703
Telephone: (510) 900-9502
rdoughty@greenfirelaw.com

*Attorneys for Plaintiffs*

I.      INTRODUCTION

On August 18, 2025, Plaintiffs filed a Notice of New Evidence and Request for Judicial Notice in support of their motion for summary judgment and response to TxDOT's cross-motion. ECF 87. Plaintiffs asked the Court to take judicial notice of the Texas Commission on Environmental Quality's ("TCEQ") 2025 Annual Monitoring Network Plan ("2025 Monitoring Plan"), including statements about fine-particulate matter (PM2.5) measurements and Clean Air Act ("CAA") monitoring in Austin. ECF 87, p. 2. In Opposition (ECF 89), TxDOT does not challenge the accuracy of the information in the 2025 Monitoring Plan, nor the authenticity of it as a public record. *See id*. Rather, TxDOT contends that the document is irrelevant to TxDOT's analysis because TxDOT did not conduct a quantitative assessment of PM2.5 during its environmental review of I-35. ECF 89, pp. 5-6. However, this material is relevant because TxDOT has elected to rely upon the CAA's conformity provisions to comply with NEPA for the Project, and the 2025 Monitoring Plan further demonstrates that this reliance is unreasonable, and therefore, arbitrary and capricious. *See Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1021 (5th Cir. 2019) ("[A]n agency's action is arbitrary and capricious if illogical on its own terms." (cleaned up)).

II.     **Argument: TxDOT's Reliance on CAA Conformity Determinations Lacks a Rational Basis for Project-Specific NEPA Review**

As the below image shows, there are two air monitoring stations located near the I-35 Project that measure PM2.5: the Austin Webberville Rd station and the Austin Webberville Rd station:

[Map of Austin, Texas showing PM₂.₅ EPA Air Quality Monitors at Austin North Interstate 35 and Austin Webberville Rd locations, with the Project Area marked along I-35.]

*See* ECF 72-4, p. 30.

Previously, TCEQ excluded the data from the Austin Webberville Rd monitoring station when examining NAAQS compliance. *See* 87-2, p. 9. And now, as discussed in the 2025 Monitoring Plan, TCEQ also proposes to exclude the data from the Austin North Interstate 35 monitoring station. *See id.* at pp. 28-30. The 2025 Monitoring Plan explains: "[t]hese sites are for high traffic corridors where the general public could be exposed to maximum concentrations from mobile sources, creating localized hot spots. These measurements are representative of the air quality in the area immediately around the sites on the surrounding streets." *Id.* p. 26.

The exclusion is based on TCEQ's acknowledgement that the PM2.5 NAAQS is exceeded in this area because of I-35 and, notably, road construction. *See id.* at pp. 30-31.

As noted in Plaintiff's opening brief (ECF 72, p. 13), both air monitoring stations show the current, baseline air quality in Austin already exceeds the PM2.5 NAAQS (9 µg/m³), and it is

entirely foreseeable that emissions of PM2.5 from the I-35 Project are likely to have significant adverse effects by increasing the exceedance of the PM2.5 NAAQS:

| AQS Site ID | Site Name | 2012-2014 DV* | 2013-2015 DV | 2014-2016 DV | 2015-2017 DV | 2016-2018 DV | 2017-2019 DV | 2018-2020 DV | 2019-2021 DV | 2020-2022 DV | 2021-2023 DV |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 484530021 | Austin Webberville Rd | 9.4 | 9.2 | 9.6 | 9.6 | 9.8 | 9.8 | 9.6 | 9.5 | 9.2 | 9.3 |
| 484531068 | Austin North Interstate 35 | - | - | - | - | - | 9.3 | 9.3 | 9.2 | 9.3 | 9.6 |

DV, or design value, is the annual mean concentration, averaged over three consecutive years. Concentrations are in µg/m³
Source of data: EPA Air Quality System at https://www.epa.gov/air-trends/air-quality-design-values#report

*See* ECF 72-4, p. 26. The very basis given by TDEQ for excluding monitoring from these stations is the PM2.5 pollution from road traffic and construction, noting the effects of heavy traffic and construction since 2022. *See* ECF 87-2, p. 31.

NEPA's requires analysis of reasonably foreseeable future impacts of proposed government action. *See* 42 U.S.C. § 4332; *Louisiana v. Fed. Power Com.*, 503 F.2d 844, 876 (5th Cir. 1974) (NEPA mandates that the government "predict the environmental effects of proposed action before the action is taken and those effects fully known"). TxDOT's position is that foreseeable future impacts are wholly immaterial because Travis County's designation under the CAA as in attainment or unclassifiable is "unlikely to change" in the future. ECF 75 (Defendant's Cross-Motion and Response), p. 31. The 2025 Monitoring Plan proves, however, that this change is "unlikely" only because TCEQ is acting to exclude air monitoring data from two key monitoring sites along the I-35 corridor. ECF 87-2, p. 31. It is nonsensical to argue that regional NAAQS conformity can say anything meaningful—baseline or future--about near-road pollution while at the same time excluding data from near-road monitors from regional NAAQS conformity analysis.

Without incorporating data from the most affected areas, TxDOT's approach fails to provide a rational or adequate assessment of post-project conditions, leaving the true environmental health risks to residents unaddressed. This distinction underscores that NEPA and

the CAA are separate statutes, each with their own purpose and requirements. Therefore, Plaintiffs request that the Court take judicial notice of the 2025 Monitoring Plan, grant summary judgement in Plaintiffs' favor, and require a supplemental analysis that meaningfully considers air quality impacts in compliance with NEPA.

### III.     Conclusion

Judicial notice of the 2025 Monitoring Plan is appropriate because it is a reliable source, explaining why Texas's air quality analysis for CAA purposes is not an appropriate substitute for the analysis of PM2.5 impacts of the Project, which is required under NEPA. Defendants simply have not considered the impacts of their Project on PM2.5, and none of their post hoc rationalizations for that failure can cure the NEPA legal deficiency.

/S/ Rachel S. Doughty
Rachel S. Doughty
GREENFIRE LAW, PC

*Attorneys for Plaintiff, RETHINK35*

### CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically notify via email all counsel of record.

/s/ Rachel S. Doughty